PAUL FOWLER v. THE STATE.

No. 2511. Decided June 11, 1913.

Rehearing denied June 27, 1913.

**1.—Murder—Transcript—Filing—Ninety-day Limit.**

Our civil statutes, the rules of the Supreme Court, and the Code of Criminal Procedure provide for the filing of the transcript in the Appellate Court within not exceeding ninety days after appeal is perfected, and where the statement of facts and bills of exceptions were not filed within said time, the same can not be considered on appeal.

**2.—Same—Statement of Facts—Term of Court—Adjournment.**

When an appeal is taken from the judgment rendered in the District Court, the parties have thirty days after the day of adjournment of court, or, if the term continues in session more than eight weeks, after the motion for new trial shall have been overruled, in which to prepare and file a statement of facts and bills of exception, unless more time is granted for good cause shown; but the time can not be extended so as to delay the filing of the transcript beyond the time prescribed by law.

**3.—Same—Special Venire—Motion to Quash—Statement of Facts—Bills of Exception.**

Where the evidence, on a motion to quash the special venire, was not filed in term time or in the time allowed by law for filing statement of facts, etc., the same can not be considered and it must be presumed that the court correctly overruled the motion.

**4.—Same—Continuance—Bill of Exceptions.**

In the absence of a bill of exceptions, the overruling of a motion for continuance can not be considered on appeal.

**5.—Same—Indictment—Precedent.**

Where, upon trial of murder, the indictment followed approved precedent, there was no error in overruling a motion to quash.

**6.—Same—Grand Jury—Constitutional Law.**

Where the grand jury was organized in the manner provided by law under our Code, there was no error, and said law is not unconstitutional.

**7.—Same—Grand Jury—Oath.**

A complaint that the grand jury was not properly sworn can not be considered, in the absence of the testimony heard upon such motion.

**8.—Same—Sheriff—Oath—Special Venire.**

Upon trial of murder, it was unnecessary to swear the sheriff in ordering him to summons the special venire drawn in accordance with law.

Vol. 71 Crim.-1.

**9.—Same—Confession—Evidence—Charge of Court.**

Where defendant's confessions were reduced to writing in compliance with the statute, and there was no testimony tending to show that it should not have been admitted in evidence, and the court properly charged the jury thereon, that it must have been freely and voluntarily made, and the same was sufficient to sustain the conviction together with the other testimony adduced, the conviction of murder in the first degree assessing the death penalty is sustained.

Appeal from the District Court of Tarrant. Tried below before the Hon. R. H. Buck.

Appeal from a conviction of murder in the first degree; penalty, death. The opinion states the case.

*G. R. Lipscomb,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of statement of facts adduced on motion for new trial: Brobest v. State, 60 Texas Crim. Rep., 608; Knight v. State, 64 Texas Crim. Rep., 541, 144 S. W. Rep., 967; Brewer v. State, 153 S. W. Rep., 622.

On question of confessions: Morris v. State, 39 Texas Crim Rep., 371; Cortes v. State, 43 id., 375; Knight v. State, 55 id., 243; Jordan v. State, 51 id., 145; Berry v. State, 58 Texas Crim. Rep., 291, 125 S. W. Rep., 580.

HARPER, JUDGE.—Appellant was prosecuted and convicted of murder in the first degree and his punishment assessed at death. The term of court at which appellant was tried convened August 5, 1912, and adjourned November 2, 1912. The motion for a new trial was filed in the court below August 23, 1912, and overruled by the court on the 26th day of August, 1912. There are several bills of exception in the record, and a statement of facts, all filed on the 29th day of November, 1912,—ninety-five days after the date of the overruling of the motion for new trial. Section 7, of chapter 119, of the Acts of the Thirty-second Legislature provides: That when appeal is taken from the judgment rendered in any cause in District Court, the parties are entitled and granted thirty days after the day of adjournment of court in which to prepare and file a statement of facts and bills of exception; provided, that if the term of said court may by law continue in session more than eight weeks, said statement of facts and bills of exception shall be filed within thirty days after the motion for new trial shall have been overruled. It is further provided, for good cause shown, the court may extend the time but the time shall not be extended so as to delay the filing of the transcript of the record in the appellate court within the time prescribed by law. Our Civil Statutes and the rules of the Supreme Court and the Code of Criminal Procedure provide for the filing of the transcript in the appellate court within not exceeding ninety days. (Rule 2 adopted by the Supreme Court for the Courts of Civil Appeals; Rules 1 and 2 of the Supreme Court for the Court of Criminal Appeals.) Art. 5, sec. 25, of the Constitution.

The judge in this case did not seek to grant more than ninety days, and if he had done so his order would have been void. Inasmuch as the statement of facts and bills of exceptions were not filed within the time provided by law, the court continuing more than eight weeks, we are not authorized to consider them, and the motion for new trial presents no question we can review in the absence of a statement of facts and bills of exceptions. Unless the statutes make provision for the filing of statement of facts and bills of exception after the adjournment, under the rules of law, those papers must be filed in term time. Our statute is liberal in this respect, but there is no authority in this court or any other court to grant more time after adjournment than is specifically allowed by the statute.

Appellant filed a motion to quash or challenge the venire of jurymen drawn to compose the grand jury. The court in his order overruling the motion states he heard the evidence adduced on the hearing of this challenge or motion and the argument of counsel thereon, and being fully advised as to the law governing the issues, is of the opinion that defendant's challenge should be overruled. As the evidence heard on said motion was not filed in term time, nor in the time allowed by law for filing statements of facts and bills of exception, we can not consider same, and under such circumstances we must presume that the court ruled correctly in the premises.

Appellant filed a motion for a continuance. No bill of exceptions was reserved within the time allowed by law; consequently, under an unbroken line of decisions we would not be authorized to review this question. However, we may add that had a bill been properly reserved the application presents no ground for a continuance.

The court did not err in overruling the motion to quash the indictment. The indictment is couched in terms frequently approved by this court, and the grounds alleged are similar to those alleged in the challenge to array of grand jurymen, and as said in that instance, the court heard the testimony adduced thereon; this evidence is not brought before us in a way we can consider it, therefore, we presume the court ruled correctly.

The grand jury was organized in the manner provided by our Code, and those provisions of the Code are not unconstitutional as contended. Those allegations contained in the motion for new trial, which it took evidence to support, the court heard the evidence; we do not know what the testimony was, and under such circumstances we can not review that ground in the motion for new trial which states the grand jury was not properly sworn, etc.

It was unnecessary for the court to swear the sheriff in ordering him to summon the special venire drawn in accordance with law. The oath of office he took was sufficient. He was sworn to summon the talesmen as provided by our Code.

The confession of defendant was reduced to writing and is in full compliance with our statute governing the admissibility of confessions.

If there was any testimony which would tend to show that it should not have been admitted in evidence, the evidence should have been preserved by a bill of exceptions, prepared, approved and filed within the time provided by law. The confession reads:

"I, Paul Fowler, after having been duly warned by J. M. Brown, assistant county attorney, first, that I do not have to make any statement at all; and that if I do make a statement the same may be used in evidence against me on the trial for the offenses or offense concerning which this statement is herein made and that this statement must be freely and voluntarily made, do make this free and voluntary statement to J. M. Brown, assistant county attorney, the person by whom the above warning was given me.

"My name is Paul Fowler. I am 18 years of age. I live at 1114 Dallas Alley, Fort Worth, Texas. I ate supper at home with my grandmother about 6 o'clock, and left there and went up East Front Street to Main Street. This was on Monday night before I was arrested on Tuesday evening. When I got to Main Street I stopped at the Terminal Haberdasher and looked in the window at some pants, and I left there and walked to Fifteenth and Main Streets, and looked in at the show window at L. Gordan's and went from there on up Main Street to Ninth Street, and turned on Ninth, and went to Jones Street, and up Jones Street to Eighth Street and east on Eighth Street to Calhoun Street, where I met a friend of mine by the name of 'Rabbitt.' We went in the saloon on the corner of Eighth and Calhoun Streets, and I bought a half pint of whisky. I left 'Rabbitt' there and went on up to Brann's saloon on Main Street near the courthouse. I do not exactly remember the route I took from the saloon on Eighth and Calhoun to Brann's saloon. At Brann's saloon I met Ernest Harrison, Johnson Gilbert, Scotland Anderson and a boy by the name of Douglas. We were in the back of the saloon and while there we drank a can of beer. I do not remember how long we were there, but not very long; we left there, and all went to a pool hall back of the saloon on West Belknap and North Houston Streets, except Johnson Gilbert, who left Brann's saloon before we did. We were around that pool hall two or three hours, playing dominoes. After we finished playing dominoes I went back to the toilet, and when I came back Ernest Harrison was gone. He was gone but a very short time when he came back and we left the pool hall. Scotland Anderson had left before we left, and the Douglas boy was still there when we left. Ernest Harrison and I went down Houston Street to Weatherford Street, down Weatherford to Main Street, and down Main to East Front Street. We went down East Front to Kentucky, and down Kentucky to Dallas Alley, and down the alley to my grandmother's house. I went to the toilet in the back yard and Ernest waited in the back yard while I was in the toilet. We retraced our steps back to East Front and Kentucky, and as we reached East Front Street we saw a man going east on Front Street, on the north

side of the street, and Ernest was in front of me and he got in front of the man while I was to the side of the man. Ernest was in front, and stopped the man and we threw our guns down on him. The man tried to say something, but could not and then he hollered, and the guns fired. I do not know which fired first, but my gun went off, and there was only two shots fired, Ernest firing one and me the other. I have never seen the man before to my knowledge. While we were on the way to my house to the toilet, Ernest had said, 'Suppose we should meet a live one, we would make some money, maybe,' and when we went over to where this man was and threw our guns on him our intention was to get his money if he had any, and if he had given it up there would have been no trouble. He never did put his hands up, but kept doing something with his coat that he was carrying on his arm at the time. After the shots were fired I ran home to my grandmother's and when I got there Ernest was there. I knocked on the side of the house and told my grandmother to let me in, and she got up and let us in at the back door. I do not know which way Ernest ran from the place where the shooting took place, but I ran up the sidewalk to the alley. When we got in the house we laid our guns on the table. The next morning I found the black gun in the dresser drawer, and I took both of the guns and put one in one trunk and one in another trunk. Soon after we got in the house that night we went straight to bed, did not talk about the shooting, and I soon went to sleep. We got up about 6 o'clock the next morning and went away together, and I went to work at the Walker Grain Company, and I do not know where Ernest went after we left the house, for he left me. I have not seen Ernest since. The guns that we had Ernest had gotten them somewhere, I do not know where. The first time that I saw the guns was in the pool hall back of the saloon on the corner of North Houston and West Belknap, and that was before 6 o'clock on the afternoon before the night of the shooting.

"Ernest brought me a 41-Colts, a bright looking gun, and told me to put it on, and I stuck it under my shirt in the waist band of my pants. He had one on, but I did not see it at that time, but I felt it. We had the guns with us in the afternoon at Doc White's barber shop on East Front Street. While I was in his shop I pulled off the one that I had and put it in a drawer while I played dominoes. The guns that we had that night, and that we did the shooting with are the same ones that I put in the trunks the next morning, and are the same ones that the officers have here tonight. This all that I can remember about this matter at this time.

(Signed)  "Paul Fowler."

Witnesses:

    J. W. Renfro,

    J. A. Connelly.

As stated before, the bill presenting this question was not filed in

time to authorize us to review the action of the court in admitting it, but in the charge we find the court instructed the jury:

"You are instructed that unless you believe from the evidence beyond a reasonable doubt that the defendant, Paul Fowler, was warned by the assistant county attorney, J. M. Brown, in and for Tarrant County, Texas, before he made the purported confession claimed to have been made to and before the said Assistant County Attorney Brown, and introduced as evidence in this case, and to the effect that he, the said Paul Fowler, did not have to make any statement at all, and that if he made a statement the same might be used in evidence against him on the trial for the offenses or offense concerning which the statement is made, and that the statement was freely and voluntarily to the Assistant County Attorney Brown, then you will not consider this confession for any purpose as evidence of defendant's guilt."

So, if the testimony, which we have not before us in such condition we can consider it, raised the issue that it was not freely and voluntarily made, the court in his charge properly submitted that issue.

In the absence of a statement of facts we can consider, we must presume that the court charged the law, and all the law applicable to the testimony adduced on the trial, and we are not authorized to determine whether or not the special charges should have been given. However, we will state that as the jury assessed the death penalty we have read the statement of facts herein filed, and copied herein the confession of defendant, although not properly before us, even though not filed in the time permitted by law, and if we could consider this testimony, we would hold that the court did not err in refusing the special charges requested, and that it supports the verdict.

Judgment affirmed.

*Affirmed.*

[Rehearing denied June 27, 1913.—Reporter.]